UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM HOWELL,

                    Plaintiff,
            -vs-                              16-CV-6117

CORRECTIONAL MEDICAL CARE, INC., et al,

                    Defendants.
-------------------------------------


          Proceedings held before the

       Honorable Marian W. Payson, Kenneth B.

       Keating Courthouse, 100 State Street,

       Rochester, New York, on September 20,

       2017.


       APPEARANCES:

       MARIA DYSON, ESQ.,
       Appearing for Plaintiff.

       NANCY QUINN KOBA, ESQ.
       Appearing telephonically for
       Shahid Ali, N.P.

       JAMES H. COSGRIFF III, ESQ.,
       Appearing for remaining Defendants.


       AUDIO RECORDER:  Catherine A. Marr


       TRANSCRIBER:     Michelle L. McLaughlin, RPR,
                        Court Reporter,
                        716/332-3560


       (Proceedings recorded by electronic sound
       recording, transcript produced by computer.)

1          THE COURT:  Good afternoon.  Please be

2     seated.

3          THE CLERK:  William Howell versus

4     Correctional Medical Care, 16-CV-6117.

5          THE COURT:  Okay.  Would counsel note

6     their appearances for the record?  For plaintiff?

7          MS. DYSON:  Maria Dyson of the Law Offices

8     of Elmer Robert Keach III, P.C., on behalf of the

9     plaintiff William Howell.

10          THE COURT:  All right.  Miss Dyson.

11      For defendants?

12          MR. COSGRIFF:  James Cosgriff for the

13     medical defendants and the county defendants except

14     defendant Ali and Betsy Teller.

15          THE COURT:  Okay.  Mr. Cosgriff.

16      And then we have on the phone for -- is it

17     Nurse Practitioner Ali, we have Miss Koba?

18          MS. KOBA:  Yes, your Honor.

19          THE COURT:  And that's Nancy Koba,

20     K-O-B-A?

21          MS. KOBA:  Correct.

22          THE COURT:  Okay.  All right.  Good

23     afternoon.

24          MS. KOBA:  Good afternoon, your Honor.

25          THE COURT:  So pending before the Court is

1    a motion brought by plaintiff for the imposition of

2    sanctions as a result of noncompliance with

3    discovery requests served, as well as I would say a

4    prior motion -- excuse me, a prior order by this

5    Court compelling the production of documents.

6        Let me begin by asking Ms. Dyson whether there

7    have been any changes factually since the

8    submission of Mr. Cosgriff's opposition which was

9    at the end of July.  What's happened with discovery

10   since then?  And if you'd like to stand to address

11   the Court, please come to the podium so that you

12   can talk into the microphone.

13             MS. DYSON:  Yes, your Honor.

14             THE COURT:  Okay.

15             MS. DYSON:  Your Honor, since the -- since

16   we filed the motion for sanctions, we have received

17   responses from the defendants.  However we maintain

18   that these responses are woefully deficient.

19             THE COURT:  Pull the microphone -- yeah.

20             MS. DYSON:  Should I start over?

21             THE COURT:  No.

22             MS. DYSON:  Okay.  These responses were

23   woefully deficient as it relates to the document

24   demands.  We finally received a copy -- a full copy

25   of Mr. Howell's medical records.  But beyond the

1    medical records and in agreement between a nurse

2    practitioner, we have not received any documents

3    from the defendants.  They are -- responses to our

4    document demands indicated that CMC or Correctional

5    Medical Care did not have documents responsive to

6    the request, but the County of Monroe might have

7    it.  And that was the answer to almost all of our

8    document requests.  And to date we have not

9    received any supplemental responses or documents

10   responsive to this request.

11       And as it relates to our interrogatory demands

12   which were very specific, we asked questions like

13   who were the people responsible for making specific

14   decisions as it relates to the treatment that was

15   provided to the plaintiff, we received almost

16   identical responses to each interrogatory demand.

17   And those responses indicated that they were vague,

18   that they were --

19           THE COURT:  Okay.  Are we talking about

20   the same interrogatory responses that existed at

21   the time the motion was fully briefed?

22           MS. DYSON:  Yes, your Honor.

23           THE COURT:  Okay.  So in that respect

24   there was no change.  That was my question, has

25   anything changed since the motion was fully

1    submitted.  You have the interrogatory responses

2    which I've reviewed.  I understand the argument

3    you're making with respect to the responses.  You

4    haven't received any supplemental responses to the

5    interrogatories?

6              MS. DYSON:  No, your Honor.

7              THE COURT:  Okay.  And -- all right.  So

8    with respect to documents, you've gotten medical --

9    the plaintiff's medical record?

10             MS. DYSON:  Yes.

11             THE COURT:  Okay.  And you've gotten --

12   when you say an agreement --

13             MS. DYSON:  It's some type of contractual

14   agreement between -- I believe it's defendant Ali,

15   who is a nurse practitioner, and Correctional

16   Medical Care.

17             THE COURT:  Okay.  Did you get that from

18   Ali or from CMC?

19             MS. DYSON:  My understanding it was from

20   CMC.

21             THE COURT:  Okay.  All right.  Have you

22   had any -- has your side had any conversations with

23   Mr. Cosgriff about any of the documents that have

24   been not been produced?

25             MS. DYSON:  Other than the communications

1       that were attached for your Honor with the motion

2       for sanctions, which included emails asking for the

3       defendants to supplement their responses, there's

4       been -- I don't believe that there's been any

5       further communication.

6                   THE COURT:  Okay.  Thank you.

7               Mr. Cosgriff, why don't you come on up.

8                   MR. COSGRIFF:  Good afternoon, your Honor.

9                   THE COURT:  Good afternoon.

10                  MR. COSGRIFF:  Okay.

11                  THE COURT:  So, let's start with the

12      document demands.  Do you represent Monroe County

13      as well as CMC?

14                  MR. COSGRIFF:  I do, your Honor.

15                  THE COURT:  Okay.  So --

16                  MR. COSGRIFF:  And I am awaiting some

17      additional documents from Monroe County.  With

18      respect to the other responses that I did provide,

19      we do not have many of the things that were

20      requested.  Some of the documents that were

21      requested I did object to in my responses because

22      they went to personal tax returns for some of the

23      named defendants.  And in addition to that, they

24      went back a 12-year period.  So I did note my

25      objection in my responses to those.

1        But to date, your Honor -- and I apologize to

2    counsel and to the Court to begin with for my

3    tardiness in getting these things out.  But at this

4    point we have responded to the best of our ability

5    pending what I can get, if anything, from the

6    county, as to whether or not they have any

7    documentation.

8            THE COURT:  Okay.  And what is -- what

9    argument do you have other than mea culpa for not

10   having produced the documents certainly in

11   compliance with a court order issued in response to

12   a prior motion to compel requiring you to produce

13   those documents which were belated at the time of

14   the prior motion to compel by July 7th?

15           MR. COSGRIFF:  Well, other than waiting

16   for additional documentation from the county, we do

17   not have anything further to provide.

18           THE COURT:  Well, you represent the

19   county.

20           MR. COSGRIFF:  I do.

21           THE COURT:  Okay.  So waiting for

22   documents from the county is not an adequate

23   response.  If you're waiting for documents from the

24   county, the county is your client.  They're your

25   documents.  They have to be produced.  They should

1  have been produced -- these document requests were

2  served in July of 2016, over a year ago.  They were

3  the subject of a motion to compel brought

4  April 27th of 2017.  I issued a motion scheduling

5  order.  There was no response by defendants in

6  the -- noting the failure to oppose, I granted what

7  was a previous motion to compel June 16th and

8  ordered those documents to be produced by July 7th.

9  So it seems like it is months, if not over a year

10 too late to say they're getting them.

11         MR. COSGRIFF:  Well, I thought -- and

12 again it goes to me.  I thought the medical

13 defendants would have had policies and procedures

14 from the jail.  They do have an agreement with the

15 county to provide the medical services.  And I

16 assumed that policy and procedures for that would

17 have been part of the agreement and part of the

18 file that the medical defendants would have had.

19         THE COURT:  All right.  So you're saying

20 that you thought -- if I'm understanding you

21 correctly, you thought it was going to be easier

22 than it was to get those documents because you

23 thought they would be within the custody, control

24 of CMC and easier to produce than it, in fact, has

25 turned out to be?

1          MR. COSGRIFF:  That -- that's what I

2    thought it was going to be, your Honor.

3          THE COURT:  Okay.

4          MS. DYSON:  Your Honor, if I my be heard

5    on one point?

6          THE COURT:  I'm not -- I'm not done

7    thinking about what Mr. Cosgriff has said.

8       All right.  So, yeah, I think the -- the issue

9    that I'd like to know from you, Miss Dyson, and if

10   there's anything else you want to say, you can do

11   that as to this issue of documents, what's the

12   relevance of tax returns for individual defendants?

13   That seems a bit unusual.

14         MS. DYSON:  Your Honor, I would -- this

15   issue has been addressed by other courts in which

16   we have litigation against Correctional Medical

17   Care.  And the way that those courts have resolved

18   our requests for financial information is they have

19   not allowed us to get tax returns, but they have

20   allowed us to get certain type of financial

21   documents that help us prove our Monell claim.  So

22   to --

23         THE COURT:  In what respect do those

24   documents help you prove a Monell claim?

25         MS. DYSON:  One of the documents we've

1  been able to obtain are annual profit statements,

2  and we're able to compare those to the requests for

3  proposals that are submitted to the county by CMC.

4  And what we're able to show is CMC's representation

5  to various counties in which they have contracts

6  about the profit margin that they're going to have

7  is incorrect.  Oftentimes it will be five to ten

8  times higher, and the way we've --

9       THE COURT:  Okay.  But that has nothing to

10 do with individual defendants, right?  That has to

11 do with CMC the entity, right?

12      MS. DYSON:  Yes, your Honor.

13      THE COURT:  Okay.  So just stay with me

14 with respect to -- Mr. Cosgriff is telling me that

15 the documents that you were requesting -- and I

16 know I have a copy of the request for production of

17 documents include individual -- tax returns for the

18 individual defendants, is that what you're saying?

19      MR. COSGRIFF:  That's correct, your Honor.

20      THE COURT:  Okay.  And show me -- tell me

21 what request that is.

22      MR. COSGRIFF:  On the document demand

23 specifically document 18, documents reflecting

24 salary and profits paid to the personal defendants

25 Umar and Carpio.  And I believe there is some other

1    documentation in here.  Number 17 talks about the

2    corporate tax returns.

3            THE COURT:  Okay.  I'm not requiring that

4    any tax returns for any of the individual

5    defendants be produced to the extent that any of

6    these requests could be read to include those.  And

7    I don't know that we need to go through them and go

8    through that exercise.  It doesn't seem to be

9    something that plaintiff is pressing, but, in any

10   event, I don't think in a case like this I would

11   find really under any argument that I can think of

12   that there would be a justification for turning

13   over individual tax returns.  So you don't need to

14   read them to include that.

15       With respect to CMC, Miss Dyson, are you

16   agreeable to talking with Mr. Cosgriff about the

17   case law that you're referencing and conferring

18   with him as to the particular financial information

19   as to CMC that you're looking for and that you

20   believe has been upheld by other cases?

21           MS. DYSON:  Yes, your Honor.

22           THE COURT:  Okay.  So I'm going to direct

23   that you have that conferral, okay?

24           MR. COSGRIFF:  Very well.

25           THE COURT:  Now with respect to the

1    remainder of the -- is there something else you

2    wanted to say?  Or is that the issue you wanted to

3    raise?

4            MS. DYSON:  There was one issue that was

5    raised by Mr. Cosgriff that -- and I have no doubt

6    that this is what's been reported to him by his

7    clients.  But I know from other litigation with or

8    against CMC that there are a range of documents

9    that are maintained by Correctional Medical Care,

10   including documents relating to the Attorney

11   General investigation and the audits that have been

12   conducted at the direction by the Attorney General.

13   And also there's various investigations that are

14   triggered when there's a lawsuit filed, and

15   including medical audit committees that meet,

16   quality care, audit committees that meet, and these

17   are documents that we have been able to obtain in

18   other litigation and we believe exist here.  And I

19   believe that Mr. Cosgriff should talk to his client

20   and find out whether or not Correctional Medical

21   Care has these documents, because it has existed in

22   all of our other cases against CMC.

23           THE COURT:  Well, that certainly seems to

24   be a fair observation.  This is what I'm going to

25   do with respect to the document request.  They have

1     been subject to a prior motion to compel.  And they

2     should not be subject to another motion for

3     sanctions, let alone the first motion to compel.  I

4     appreciate Mr. Cosgriff's affidavit indicates that

5     he's not been subject to a motion for sanctions in

6     his professional life.  But this seems to me, two

7     essentially in the span of a couple of months is --

8     is certainly not -- not a trend that anybody wants

9     to -- wants to continue.

10         The record certainly justifies a finding that

11     defendants' objections to production of documents

12     have been waived, I would say with the exception of

13     the individual tax returns.  I think they are of

14     such heightened sensitivity, and there's nothing

15     here that indicates that those individual

16     defendants have themselves been responsible for any

17     delay in turning over the documents.  So I don't

18     think they should be penalized by

19     over-interpreting, number one, the document request

20     to request them, and then, number two, to find that

21     they've been waived.  I think they are sensitive

22     enough, their relevance is very attenuated.  So I'm

23     not going to require those.

24         I am going to give the defendants one more

25     month to produce documents.  If the documents are

1    not produced by that deadline, they -- that

2    noncompliance, dereliction of duty, will likely

3    give rise to more serious sanctions.  And I'm not

4    done with the sanctions here.  But my main focus is

5    in getting those documents produced.

6        The allegations in this case are serious

7    allegations.  That is not any opinion as to the

8    ultimate merits of the case, but I have -- I read

9    the complaint, and the allegations are certainly

10   serious allegations, and the plaintiff is on firm

11   footing to ask for the Court's assistance in

12   ensuring that discovery moves along in the manner

13   it should move along.

14       So, the documents need to be produced.  They

15   need to be produced whether they are in the

16   custody, control of CMC or the County of Monroe.

17       Mr. Cosgriff, you represent both of them.  You

18   know, that said, it behooves both of you, if there

19   is a reasonable question as to what the plaintiff

20   is looking for here as to particular documents, to

21   talk, you know, both to talk about -- Mr. Cosgriff,

22   what you may be hearing from your client about

23   there -- the fact that they don't have certain

24   documents that Miss Dyson believes based on her

25   experience in other litigation doesn't seem quite

1     right, you should talk about that.  Because

2     ultimately having that dialogue I hope will

3     facilitate finding the documents more quickly and

4     getting them produced.

5         I don't think it is in anybody's interest,

6     including the plaintiff, to be given truckloads of

7     documents that arguably fall within the broadest

8     reading of any particular document request.  I

9     think to the extent that there's a question about

10    what is sought here, you should confer, have a

11    dialogue about, you know, what particular document

12    you're looking for, so you're not coming back to me

13    with a dispute because Mr. Cosgriff either didn't

14    give you something that you thought should have

15    been turned over, or he gave you too much and it's

16    too difficult for you to find what you're looking

17    for.  So, I still think that there is value to be

18    served by a conferral, although I recognize as a

19    legal matter that objections have, as a legal

20    matter, been waived.  But it is still in everyone's

21    interest to move this case forward as efficiently

22    as possible.  By identifying the documents that

23    you're looking for, it's going to be easier to find

24    them, it's going to be easier to turn them over,

25    and it's going to be easier for you to work with

1    them in a way that's helpful to the case.

2        So you should have that conferral.  I think you

3    ought to have that conferral -- today is Wednesday.

4    You should have that conferral by no later than

5    next Tuesday, because I think that is going to help

6    Mr. Cosgriff.

7        Mr. Cosgriff, I'm giving you 30 days from

8    today.  Today is the 20th, right?  So I'm going to

9    say October 20th -- Friday, October 20th, is the

10   date set by this Court order for production of

11   those documents that still need to be produced.

12   Failure to comply with that order will result --

13   very likely to result in more serious sanctions.

14       MS. DYSON:  Your Honor, if I may have a

15   small indulgence from the Court?  I'm finally

16   taking a vacation in a very long time over the next

17   couple days.  I get back on Monday.  If I could

18   have until Wednesday to put together -- I'd like to

19   put together a packet of sample documents that

20   we've received in other litigation to help Mr.

21   Cosgriff identify what we're looking for, as well

22   as a list of what I'm looking for.

23       THE COURT:  Sure.  Why don't we do this.

24   You'll confer by no later than Friday of next week.

25   That gives you time to put together a packet of

1    documents.  It gives Mr. Cosgriff some time to look

2    at it.  You'll confer by the 29th.  And I'm going

3    to set October 27th instead of the 20th as the date

4    for document production.

5         All right.  Let's talk about interrogatories.

6    I've reviewed the interrogatory responses and --

7    well, the first question I want to ask is when were

8    the interrogatories served?  I have a copy of the

9    defendants' answers.  I don't have a copy of the

10   original interrogatories to know when they were

11   served.

12         MS. DYSON:  I have the original

13   interrogatories, and the date that I completed

14   them.  Usually the way it happens in our office is

15   we serve it electronically on the date that we sign

16   it and then send it out by regular mail.  I just

17   don't have the date that they were actually served

18   on the defendant.  But the date on these

19   interrogatories are July 15th, 2016.

20         THE COURT:  Okay.  So we're talking about

21   something that's about the same date as the

22   document request.

23         MS. DYSON:  Yes, your Honor.

24         THE COURT:  Okay.  So, I've looked at the

25   interrogatory requests and I've looked at the

1    interrogatory responses.  I don't intend to go

2    through every interrogatory that has been asked,

3    although I think generally the interrogatories seem

4    to be appropriate interrogatories.  A number of the

5    manner of the objections I noted, in my view, are

6    really not appropriate objections to an

7    interrogatory, such as the information is better

8    obtained at a deposition.  I mean, certainly that's

9    something that -- that the parties can discuss at

10   an informal conferral.  There could be, I guess, a

11   motion for a protective order filed by somebody

12   responding setting forth why responding to an

13   interrogatory would be unduly burdensome.

14       I would say, you know, oftentimes getting

15   information through an interrogatory is actually

16   helpful before a deposition rather than the other

17   way around.  So that -- that response is not --

18   certainly not a legal basis to resist responding to

19   an interrogatory.  There isn't any law that now

20   prohibits contention interrogatories, even if I

21   were to agree that some of these interrogatories

22   are, in fact, contention interrogatories, and I'm

23   not sure I agree with that, but there's no legal

24   bar on contention interrogatories.

25       But again, beyond that, the objections have

1   been waived.  They are untimely.  They were

2   responded to in June of 2017.  So, I mean, unless

3   there's something I'm missing about the timing, it

4   seems as if we're dealing with something that --

5   that at best fell through the cracks for a long

6   period of time.  So, the interrogatories need to be

7   responded to, you know, and as best you are able

8   and the rules require that they be responded to

9   after a diligent inquiry to put the party in a

10  position of responding to the interrogatories.  So

11  you can't simply say, you know, I don't know, or so

12  and so doesn't know the answer to that if there is

13  information that's reasonably accessible to that

14  individual, which would -- or party which would

15  enable them to answer the interrogatories.

16      Again, looking through these interrogatories,

17  they don't seem like they are out of line, and I

18  think they need to be responded to.  So, we'll set

19  the same date for responses to interrogatories,

20  October 27th.

21      You know, I want -- I want to be clear if --

22  that I am requiring the parties to confer about

23  these document requests and the interrogatories in

24  an effort to just to try to make things as easy for

25  the parties to get the discovery completed.

1        So, Miss Dyson, if there's something -- if you

2   can have a conversation with Mr. Cosgriff which you

3   can say as to this interrogatory, you know, this is

4   really what we're looking for, or, Mr. Cosgriff, if

5   you have a question about what they're looking for,

6   have that conversation, because I think that might

7   put you in a position of being better able to

8   answer the interrogatory, provide the information

9   that is being requested, and avoid future disputes

10  as to whether the response is adequate or not.  But

11  you can't simply say, unless there is agreement by

12  plaintiff's counsel, we're going to address this at

13  a deposition.  You've waived your right to make

14  that argument.  So I think you're going to have to

15  answer the interrogatories consistent with your

16  obligation to make a --

17          MR. COSGRIFF:  Understood.

18          THE COURT:  -- diligent inquiry.  And I am

19  imposing a financial sanction that is the --

20  requiring the defendants to reimburse plaintiff's

21  counsel for the costs of this motion.  This motion

22  should not have needed to have been made.  And I'm

23  not -- I'm not doing anything more than that.  So,

24  let's -- other judges might have taken a more, I

25  think, hardline approach to this, and perhaps would

1    have imposed other sanctions.  But there's broad

2    discretion in this area.

3         Mr. Cosgriff, I have no reason to question your

4    representation that this is very unusual for you.

5    You've been practicing a long time.  And my main

6    interest is let's get that information provided.

7    Let's move the case along.  It is serious

8    allegations.  To the extent that you're not getting

9    the attention that you need from the folks at

10   Monroe County, you just need to let them know that

11   there are going to be consequences if the documents

12   are not produced or the interrogatory responses not

13   made in a timely manner that are likely to have an

14   effect on their ability to defend against this

15   litigation in some -- in some fashion, either some

16   instruction that is given to the jury or, you know,

17   the striking of an answer, I don't want to get

18   there.  I'm sure your clients don't either.

19        So, with respect to those attorney's fees and

20   costs, it's not uncommon that I impose that

21   sanction on a record like this.  And these issues

22   do come up from time to time.  Rather than my

23   inviting litigation on it, or, you know,

24   determining a fee now, what I have found usually

25   works is to say I want you all to confer on that.

1          And, Miss Dyson, I want you to -- to let

2     Mr. Cosgriff know what your fees and costs are

3     associated with the motion.  And I'm talking about

4     this motion.  I'm not talking about the last

5     motion.  Sometimes people find a way of throwing a

6     lot of other things that happen because they happen

7     during the same chronological period.  I'm talking

8     about the fees and costs associated with drafting

9     this motion and appearing today for the motion.

10    You all should talk about what a -- you know,

11    calculate that.  If there's some basis then to have

12    further discussions about that figure, you can do

13    that.  And if you have not been able to reach an

14    agreement, and I hope that you are, then I would

15    say by that same date, October 27th, Miss Dyson,

16    you can submit to me an affidavit with whatever

17    billing records you need to submit to establish

18    your fees and costs, and I will determine the

19    amount if you can't reach an agreement.  But I find

20    usually people are able to work that out without

21    the Court having to get involved with that.  Okay?

22              MS. DYSON:  Yes, your Honor.

23              THE COURT:  Okay.

24              MR. COSGRIFF:  Thank you, your Honor.

25              THE COURT:  Mr. Cosgriff, anything else?

1              MR. COSGRIFF:  Nothing further.

2              THE COURT:  Okay.  Thank you very much.

3              MS. DYSON:  Thank you, your Honor.

4              *      *      *      *      *      *

1                        CERTIFICATION

2

3          I certify that the foregoing is a

4     correct transcription, to the best of my

5     ability, from the electronic sound recording

6     of the proceedings in this matter.

7

8

9                         s/Michelle L. McLaughlin
                          Michelle L. McLaughlin, RPR
10                            Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25