UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| WILLIAM HOWELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 6:16-CV-6117 (CJS/MWP) |
| | : | |
| CORRECTIONAL MEDICAL CARE, | : | |
| INC., *et. al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

**AFFIRMATION IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR SANCTIONS
AGAINST THE CORRECTIONAL MEDICAL CARE AND MONROE COUNTY
DEFENDANTS**

**Elmer Robert Keach, III, Esquire,** an attorney duly licensed to practice law before the

Courts of the State of New York and before this Honorable Court, hereby affirms as follows under

penalty of perjury:

1.     I am the attorney for Plaintiff William Howell in this action, and as such I am fully

familiar with the facts underlying this motion.   I provide this affirmation in support of the

Plaintiff's Motion for Sanctions against the Correctional Medical Care and Monroe County

Defendants (the "Defendants"),[1] namely Correctional Medical Care, Inc., Emre Umar, Maria

Carpio, Christine Ross, Anselmo Deasis, Betsy Teller, Monroe County, Patrick Flynn and Ron

Harling.  As a sanction for willful noncompliance with this Court's prior orders, the Plaintiff seeks

to have the Defendants' answer stricken, as well as other relief.

2.      The present motion represents the third time that the Plaintiff has had to seek the

production of relevant documents in this action.  The Plaintiff respectfully suggests that this should

---

[1] Any further references to the Defendants do not reference Defendant Shahid Ali, who is in
compliance with all discovery requests.

be the last such motion he is required to make, because at some point, this Court's very clear orders must be enforced with an appropriate penalty. It is clear, absent such a severe penalty, that the Defendants will never comply with the Plaintiff's discovery demands, which have been outstanding now for eighteen months.

3.     By way of background, the Plaintiff previously filed a Motion to Compel production of their July 15, 2016 document requests on April 27, 2017. (Docket Number 27). The Defendants failed to respond to this motion, and the Court entered an order compelling the Defendants to comply with the Plaintiff's demands on June 13, 2017. (Docket Number 30) (Exhibit A). This order directed compliance with the Plaintiff's outstanding demands by July 7, 2017. The order also contained the following language: "The County Defendants are cautioned that non-compliance with court-ordered deadlines or other obligations may result in the imposition of sanctions."

4.     The Defendants failed to meaningfully respond to this Court order, necessitating the Plaintiff filing a motion for sanctions on July 17, 2017. (Docket Number 33). The Defendants responded to that motion with what the Court described as a *mea culpa,* (Docket Number 35), but did not provide any additional disclosures to the Plaintiff prior to a motion hearing on September 20, 2017. During that hearing, the Court imposed a monetary sanction on the Defendants, and ordered that the Defendants fully comply with the Plaintiff's outstanding discovery demands by October 27, 2017. (The transcript of the hearing is attached hereto as Exhibit B). During that hearing, the Court left no ambiguity about the penalty for non-compliance. Specifically, the Court stated as follows regarding its prior orders:

- "Mr. Cosgriff, I'm giving you 30 days from today. Today is the 20th, right? So I'm going to say October 20th --- Friday, October 20th, is the date set by this Court order for production of those documents that still need to be produced. Failure to comply with that order will result – very likely to result in more serious sanctions." (Exhibit B, p. 16).
- "And I am imposing a financial sanction that is the --- requiring the defendants to

2

reimburse the plaintiff's counsel for the costs of this motion.  This motion should not have needed to be made.  And I'm not – I'm not doing anything more than that.  So, let's – other judges might have taken a more, I think, hardline approach to this, and perhaps would having imposed other sanctions….Let's move this case along.  It is serious allegations.  To the extent that you're not getting the attention that you need from the folks at Monroe County, you just need to let them know that there are going to be consequences if the documents are not produced order the interrogatory responses not made in a timely manner that are likely to have an effect on their ability to defend against this litigation in some --- in some fashion, either some instruction that is given to the jury or, you know, the striking of an answer, I don't want to get there.  I'm sure your clients don't either." (Exhibit B, pp. 20-21).

5.      The Court also addressed several issues during that hearing that are directly relevant to this proceeding.  First, the Court requested that the Plaintiff confer with the Defendants about their pending requests, and narrow down the precise set of documents sought, to avoid the production of "truckloads of documents that arguably fall within the broadest reading of any particular document request."  (Exhibit B, p. 15).  Second, the Court addressed the Defendants' objection that the Plaintiff's requests are better handled during a deposition.  Specifically, the Court stated "A number of the manner of the objections I noted, in my view, are really not appropriate objections to an interrogatory, such as the information is better obtained at a deposition.  I mean, certainly that's something that – that the parties can discuss at an informal conferral…I would say, you know, oftentimes getting information through an interrogatory is actually helpful before a deposition rather than the other way around.  So that --- that response is not – certainly not a legal basis to resist responding to an interrogatory."  (Exhibit B, p. 18).  Finally, the Court also found that "the objections have been waived.  They are untimely.  They were responded to in June of 2017.  So, I mean, unless there's something I'm missing about the timing, it seems as if we're dealing with something that – that at best fell through the cracks for a long period of time." (Exhibit B, pp. 18-19).

6.      The Court later issued an order granting the Plaintiff's Motion for Sanctions, and directing the Defendants to respond to the Plaintiff's various demands by October 27, 2017. (Docket Number 39) (Exhibit C).

7.      To date, the Plaintiff still has not received appropriate responses to their request for documents.   The Defendants did provide appropriate responses, finally, to the Plaintiff's interrogatories.  (Defendants' Supplemental Interrogatory Responses) (Exhibit D).

8.      Pursuant to the Court's direction, the Plaintiff conferred with the Defendants' counsel shortly after the motion hearing.  The Plaintiff agreed, as a professional courtesy, not to seek the financial sanctions allowed under the Court's order, with the understanding that full compliance with the prior orders would be forthcoming.  The Defendants supplied a supplemental response to the Plaintiff's document requests on October 6, 2017.  (Defendants' Supplemental Response, October 6, 2017) (without exhibits, Exhibit E).  The Plaintiff's initial requests, served on July 15, 2016, are attached hereto as Exhibit F, and the Defendants' initial responses, served on August 25, 2017 while the Plaintiff's first Motion for Sanctions was pending, are attached as Exhibit G.   Other than providing some supplemental documentation about Mr. Howell, CMC contractual agreements and some timecards, the Defendants' supplemental response was woefully inadequate.  The Defendant's supplemental response failed to address the range of documents sought by the Plaintiff, and, more importantly, twice ordered by this Court to be produced.  The Plaintiff's counsel immediately telephoned the Defendant's counsel, and detailed their dissatisfaction with this supplemental production.  The Defendants' counsel requested that the Plaintiff provide them a list of documents they were requesting, as well as some sample documentation from other litigation.  That same day, on October 6, 2017, the Plaintiff provided such a list.  (Letter from Keach to Cosgriff, October 6, 2017) (Exhibit H).  The Plaintiff also provided the Defendants with sample documents from other litigation on a CD-R on October 9,

2017.  (Letter from Mahlangu to Cosgriff, without exhibits, October 9, 2017) (Exhibit I).  These sample documents will, in part, be discussed below relative to the various deficiencies identified by the Plaintiff with the Defendants' discovery responses.

9.      Following the provision of this letter which detailed twenty-six deficient responses provided by the Defendants, the Defendants supplied their Second Supplement Document Response on November 7, 2017, after the Court's deadline.  (Second Supplemental Response) (without exhibits, Exhibit J). In their Second response, the Defendants supplied supplemental answers to **four** of their deficient responses.  (The scope of the deficiencies will be addressed at greater length below).  The Defendants also asked that the Plaintiff "refrain from any Motion practice while I continue to work on further documentation."  (Email from Cosgriff to Keach, November 7, 2017) (Exhibit K).  Other than providing some limited policies and nursing protocols (as compared to all of them), housing unit records and telephone call records, the Defendants supplied no additional information.

10.      At this point, the Plaintiff's counsel telephoned the Defendants, and detailed their intention to move for sanctions.  They also provided the Defendants with an additional opportunity to comply with the Court's order, even if that was well beyond the date on which compliance was required under the express terms of the order.  Specifically, the Plaintiff forwarded the Defendants a detailed deficiency letter on November 13, 2017, which enunciated with great specificity the Defendants' failure to provide appropriate documentation in response to the Plaintiff's requests and this Court's orders.  A copy of that deficiency letter is attached hereto as Exhibit L.  Throughout the course of that deficiency letter, the Plaintiff made clear his intention to seek sanctions, and to seek to strike the Defendants' answer.

11.      On two later occasions, namely on November 29, 2017 and December 8, 2017, the Plaintiff received requests for additional time to provide yet another supplemental response.

5

(Email from Cosgriff to Keach, November 29, 2017) (Exhibit M); (Email from Cosgriff to Keach, December 8, 2017) (Exhibit N).   On December 13, 2017, the Defendants provided their Third Supplemental Response.   (Defendants' Third Supplemental Response, December 13, 2017) (with attachments, Exhibit O).   This response provided some limited financial documents, and nothing more.   Upon receipt of this third supplemental response, which was nearly two months late according to the Court's order, the Plaintiff again detailed to the Defendants their intention to move for sanctions.   (Email Chain Between Keach and Cosgriff, December 13, 2017, p. 2) (Exhibit P). Despite this Court's prior pronouncement that it is improper for a party to offer deposition testimony in lieu of providing complete responses to discovery demands, the Defendants unbelievably maintained, repeatedly, that "ebts is certainly a forum to address your concerns." (Id, p. 1).   When the Plaintiff indicated, again, their intention to apply to the Court for sanctions, the Defendants response was not to redouble their efforts to provide appropriate responses to the Plaintiff's longstanding demands; instead, it was to ask the Court to hold a conference, and again suggested that the Plaintiff "explore at deposition those areas of inquiry which he believes may be lacking."   (Letter from Cosgriff to Court, December 18, 2017) (Exhibit Q).   The Plaintiff opposed this request for a conference, and detailed their intention to file a "motion for sanctions shortly after the receipt of [the prior discovery hearing] transcript."   (Docket Number 42, p. 1).   The Court subsequently denied the Defendants' request for a conference.   (Docket Number 43).   The Plaintiff ordered the transcript of the September 20, 2017 discovery hearing on January 3, 2018.   The transcript was produced on January 11, 2018.

12.    Despite the Plaintiff's clear intention to seek sanctions, expressed over a period of months, the Defendants have provided no other document production subsequent to their short supplemental production on December 13, 2017.   The Plaintiff has also received no assurances of further compliance as of the date of this motion.   This Second Motion for Sanctions from the

Plaintiff justifiably follows.

13.    This Court is faced with the blatant, intentional and willful violation of its Court orders.  The Defendants are well aware of the Court's direction and prior orders, and have been given several opportunities by the Court and the Plaintiff to comply.  Instead of honoring those orders, the Defendants have largely ignored them.  Instead of facilitating discovery, the Defendants have successfully stymied it, much to the detriment of the Plaintiff.  The Defendants ostensibly begged the Plaintiff's counsel not to impose the financial penalty allowed under the Court's prior order with a promise of full compliance, then they provide next to nothing in response. There is only one penalty that the Court can impose at this point to punish this wanton contempt, and deter future misconduct by the Defendants:  Striking the Defendants' answer, and entering judgment on liability for the Plaintiff.  The Plaintiff also requests that the Court impose a conditional order providing a substantial financial penalty against the Defendants in the amount of $50,000.00, payable to the Court's *pro bono* fund, should they fail to finally comply with this Court's orders, and that it provide an award of counsel fees to the Plaintiff.

14.    The depth of the Defendants' contempt for this Court's orders can be seen by its willful refusal to comply with the Plaintiff's clear discovery demands; demands that were further clarified by the Plaintiff in response to the Court's request at the September 20, 2017 motion hearing, both on the record before the Court and in subsequent correspondence.  The Plaintiff further supplied documentation to the Defendants' counsel that was obtained in other litigation to facilitate the production of relevant documentation.  In response, the Defendants supply next to nothing.  Given the severity of the remedy sought here, the gravity of the misconduct must be explored by the Plaintiff.  This misconduct is detailed at length below, as it relates to each of the Plaintiff's demands.

15.    The Plaintiff's first document request demands information about the subject matter

of this litigation, including investigative and incident reports.  (See, Exhibit F, p. 6).  The Plaintiff's second demand requests documents about investigations, as does their Twenty-Sixth demand. (Id.).   In both their motion arguments to the Court, in their letter providing clarification to the Defendants on October 6, 2017 and in their November 15, 2017 deficiency letter, the Plaintiff detailed a range of documents that would be responsive to these demands, and several other demands.  These deficiencies are supplied in the following bullet points, along with a discussion of the deficiencies:

- Correspondence Between the New York State Office of Attorney General and Correctional Medical Care.
  - The New York State Office of the Attorney General has conducted an extensive investigation into Correctional Medical Care, demanding the provision of an Assurance Agreement and further fining the company $200,000.00.  This Assurance Agreement detailed several prior instances of misconduct by Correctional Medical Care, including at the Monroe County Jail.  The Agreement also provides for the monitoring of Correctional Medical Care for several years.  (Assurance Agreement, pp. 3, 17-21) (Exhibit R).   Obviously, there has been correspondence between Correctional Medical Care and the Attorney General's office, both before and after the implementation of this agreement, especially as it relates to the Monitoring Reports detailed in the Assurance Agreement.   (Id., pp. 20-21).   This correspondence is likely to lead to the discovery of relevant information in support of the Plaintiff's *Monell* claims.   The Plaintiff also specifically requested this information in document demand 42, and raised it during oral argument.  (Exhibit B, p. 12.)
- Production of Monitoring Reports and Correspondence with Public Health Solutions
  - Pursuant to the Assurance Agreement, Correctional Medical Care was monitored by Public Health Solutions.   Public Health Solutions also performed an audit of Correctional Medical Care at all of its facilities, and prepared several reports.  An example of a report from the Albany County Jail is attached hereto as Exhibit S. This report was provided to the Defendants' counsel to facilitate the production of

other related reports.  The Plaintiff was able to obtain a redacted copy of a Public Health Solutions Report for other local jails overseen by Correctional Medical Care under a protective order.  (See, Protective Order, *Lynch v. Correctional Medical Care,* 9:14-CV-686 (DNH/ATB) (NDNY, Docket Number 71) (Exhibit T)).  These reports, and any correspondence between Correctional Medical Care and Public Health Solutions, are obviously relevant to the Plaintiff's *Monell* claims, and may have direct relevance to CMC's operations at Monroe County.

- Commission of Corrections Reports, and Correspondence between Correctional Medical Care and the Commission of Correction

  - The New York State Commission of Corrections has routinely lambasted Correctional Medical Care for its role in inmate deaths, including at the Monroe County Jail.  An example of three such reports regarding Maria Viera (Exhibit U) (Monroe County Jail, Viera's death was the subject of the New York State Office of Attorney General's Assurance Agreement), Joaquin Rodriguez (Exhibit V) (directing Monroe County to fire Correctional Medical Care for cause following death of inmate from diabetic ketoacidosis), and Mark Cannon (Exhibit W) (Albany County, finding conduct that was "grossly negligent" and "shocks the conscience" in failing to provide medical care to a detainee suffering from a stroke).  Often, Correctional Medical Care was required to take remedial action, and, based on the experience of Plaintiff's counsel, failed to do so in a meaningful way.  (See, Letter from Commission of Correction to Correctional Medical Care regarding the death of Mark Cannon, June 28, 2016) (Exhibit X) ("The Medical Review Board finds that your denial of critical failures is symptomatic of a healthcare delivery system that does not meet community standards.")  The production of these reports, and the associated correspondence, is obviously relevant to the Plaintiff's *Monell* claims, especially as they relate to CMC's operations at the Monroe County Jail.  These documents were specifically raised during the motion argument before the Court on September 20, 2017.  (Exhibit B, p. 12).

- Correctional Medical Care Records: Quality Care Reviews, Medical Audit Reviews, Clinical Summaries, Administrative Meetings and Reports Regarding Howell and others, Case Summary Prepared by Nurse Administrator

  - In prior litigation, the Plaintiff's counsel has learned that Correctional Medical Care

9

prepares numerous documents regarding inmates who are hospitalized, and their circumstances are later discussed during meetings by Correctional Medical Care staff.   Pursuant to Correctional Medical Care's proposal and contract with Monroe County, the company is required to provide monthly reports to the Monroe County Jail Administrator, establish a Quality Assurance Committee that meets regularly with the Sheriff's Department, establish a Medical Audit Committee to review health services at the jail, conduct administrative meetings and issue reports, provide an annual report regarding utilization statistics, maintain a utilization review committee, provide an annual reports to Monroe County regarding its policies and practices, and conduct mortality reviews.  (Portion of CMC Proposal to Monroe County, pp. 57, 71, 78-80 & 87) (Exhibit Y).  In past cases, the Plaintiff's counsel has seen these documents reference individual medical cases.  (See, for example, Clinical Report for Mark Cannon) (Exhibit Z); (Sample Financial Audit Email) (Exhibit AA).   Samples of these documents were provided to the Defendants' counsel from other litigation against Correctional Medical Care.  Finally, at the start of any litigation, Correctional Medical Care's Nurse Administrator prepares a summary of the care provided to the detainee.  (See, Summary of Care, Ulster County Jail, Redacted) (Exhibit BB).  Finally, the Plaintiff's counsel has seen from other cases where the medical complaints and conditions of detainees are discussed with CMC's main office by electronic mail.   These documents are obviously relevant to this case, both to Mr. Howell's primary claims, and to his *Monell* claims.  The Plaintiff knows that these documents exists from testimony and discovery in other cases, and yet none of them have been produced here, nor has a privilege log been provided.

The Plaintiff respectfully maintains that the Defendants' response to this document request is woefully inadequate, and deserving of sanctions.

16.    The Plaintiff's third request seeks audio and video recordings that were generated of Mr. Howell.  In past litigation, counsel has seen video recordings from the Monroe County Jail, and has obtained audio recordings of telephone calls made from staff telephones in local jails.  The Plaintiff requested confirmation that no recordings exist, and a justification as to why they were not

preserved.  The Plaintiff has received no response from the Defendants.

17.     The Plaintiff's sixth request seeks documentation about the medication ordered at the Monroe County Jail.  The relevance of this request is self-evident, as Mr. Howell maintains that he was given a toxic overdose of the wrong medication over a lengthy period of time.  Mr. Howell is trying to determine, by looking at a list of medicines ordered during the relative time period, what that medication may be.  The Defendants claim that they do not have any documents responsive to this request.  That response defies credulity.  Obviously, when a medical provider orders medication, there are paper or electronic records generated reflecting those purchases.  The Defendants' failure to produce these records is sanctionable.

18.     In demand number nine, the Plaintiff demands any correspondence between Correctional Medical Care and the New York State Department of Education.  For over a decade, Correctional Medical Care operated illegally as a medical company in New York State, as state law requires ownership by a physician.  Upon information and belief, Correctional Medical Care was referred to the New York State Department of Education by the Commission of Correction for corrective action.  The Plaintiff finds it difficult to believe that there would be no documentation generated in response to such an inquiry.  The Defendant's failure to produce this documentation is sanctionable.

19.     In demand number thirteen, the Plaintiff requested a copy of Correctional Medical Care's mental health policies.  Other than producing some limited policies, Correctional Medical Care failed to comply with this request.  These documents would be incorporated into a policy manual, and are easily producible.  The willful failure to produce them is sanctionable.

20.     In demands sixteen and seventeen, the Plaintiff seeks Accounting Balance Sheets and Corporate Tax Returns for Correctional Medical Care.  Those requests are made from January 1, 2005 to present.  Unbelievably, the response of Correctional Medical Care is to claim that they

must "search their records and provide a supplemental response." (Supplemental Document Responses, p. 3) (Exhibit E). Later, well after the deadline set by the Court, Correctional Medical Care provided a supplemental response with a few years of balance sheets and site reports for the Monroe County Jail; they did not provide that documentation from January 1, 2005 to present, as required by the Plaintiff's demands. Furthermore, Correctional Medical Care provided no corporate tax returns. This is despite the fact that the Court expressly addressed the corporate tax returns during the recent motion hearing, and directed their production. (Transcript of Hearing, p. 11) (Exhibit B). Correctional Medical Care claims that it needs "to search their records and provide a supplemental response" relative to these tax returns. (Supplemental Document Response, p. 3) (Exhibit D). In the four months Correctional Medical Care has had to provide these documents, they have not done so. Furthermore, the Plaintiff does not believe, for one minute, that Correctional Medical Care's corporate tax returns cannot be produced by calling the company's accountant, and asking for copies of these documents. Correctional Medical Care's refusal to produce these tax records represents a blatant disrespect for the Court, its orders, and the Plaintiff's need to take discovery in this case. Such a disrespect is deserving of a severe sanction.

21.     In demand Nineteen, the Plaintiff requested copies of Correctional Medical Care's incorporation papers, including documents representing the company's ownership at the times relevant to this litigation. Correctional Medical Care responded that it is a Pennsylvania Chapter S Corporation, and produced no documents. The Plaintiff notes for the Court that his counsel has received some of these documents in other litigation against Correctional Medical Care, so they can easily be produced. (See, CMC Corporation Filings, produced in *Lynch v. Correctional Medical Care*) (Exhibit CC). Correctional Medical Care views the Court's orders as being optional, or simply does not care about complying with them. This contempt and lack of diligence is deserving of a severe sanction.

22.     In demand twenty, the Plaintiff requests records of Correctional Medical Care's campaign contributions.  The Defendants claim they have no documentation in this regard, and that the documents are in the public record.  This is not an adequate response to a discovery demand, and the records can be easily produced.  The Defendants' failure to do so is sanctionable.

23.     In demand twenty-three, Correctional Medical Care claims that they have no documents responsive to the request for copies of the lawsuits against the company, and that the documents are in the public record.  The Defendants are well aware of when they have been sued, and can easily produce this information, either themselves or by contacting their attorneys. Furthermore, Correctional Medical Care is required to provide a litigation history as part of the bidding process to provide health services at local jails.  The Plaintiff's counsel has sued Correctional Medical Care over ten times, and in one instance where Attorney Cosgriff entered his appearance.  (See, ECF Notice, *Carter v. County of Broome*) (Exhibit DD).  The refusal to answer this clear demand is in violation of the Court's order.

24.     In demands twenty-four and twenty-five, Plaintiff sought the Monroe County Jail and Correctional Medical Care policy manuals—documents that are provided to all employees who work at the Jail and/or for Correctional Medical Care.  While the Defendants have allowed the Plaintiff to inspect these documents, they are easily copied and produced.  The Defendants simply refuse to provide them.

25.     In demand number twenty-eight, the Plaintiff requested records of any discipline imposed on Correctional Medical Care employees and/or any discipline imposed by Monroe County on Corrections Staff relating to medical issues.  Correctional Medical Care held the contract for health care at the Monroe County Jail for at least seven years.  The Plaintiff is aware that at least one Correctional Medical Care nurse was disciplined for allegedly stealing narcotic pain medication from the Monroe County Jail.  These records are obviously relevant.  The Plaintiff

does not believe that none exist, although they were potentially destroyed.  Regardless, the failure to produce these records is sanctionable.

26.    In demands number twenty-nine and thirty, the Plaintiff sought production of CMC Nursing Protocols and Training Materials.  These documents have not been produced, and there is no question that they exist.  (See, CMC Nursing Protocols, Table of Contents) (Exhibit EE).  The failure to produce these readily available documents warrants the imposition of sanctions.

27.    In demand Number Thirty-Three, the Plaintiff seeks copies of the security logs for his housing units while housed at the Monroe County Jail.  These documents have not been produced, but are instead supposed to be the subject of a "supplemental response."  No supplement has been forthcoming, and these documents can be easily found and produced.  Furthermore, in past cases, these logs have reflected medical complaints to, or observations by, Corrections Officers that were not reflected in Correctional Medical Care's medical records.  They are clearly relevant to this action.  The failure to produce these documents warrants sanctions.

28.    In demand number thirty-six, the Plaintiff demands production of records of grievances filed regarding medical care at the Monroe County Jail. Correctional Medical Care and Monroe County claim they have no such documents.  The Defendants failed to inform the Plaintiff that Correctional Medical Care's contract with Monroe County requires them to ensure that "all official grievances [are] responded to promptly …. CMC will maintain a system to track complaints from receipt to resolution.  Grievances will be logged and reviewed by Quality Assurance personnel in an effort to enhance the effectiveness of the health care delivery system.  CMC will provide a monthly report of complaints to the Administration."  (Portion of CMC Proposal to Monroe County, p. 86) (Exhibit Y).  These documents obviously exist, and are not being produced by Correctional Medical Care and Monroe County.  The failure to produce these obviously relevant documents is deserving of sanctions.

14

29.     In demand number thirty-seven, the Plaintiff sought personnel files for CMC employees at the Monroe County Jail.  The Plaintiff later agreed to limit that request to employees who provided care to Mr. Howell.  It defies credulity that Correctional Medical Care does not have any personnel records for these individuals.  Sanctions are warranted for this intentional violation of the Court's orders.

30.     In demand number Thirty-Eight, the Plaintiff sought documents regarding in-service or continuing education records from Correctional Medical Care.  While the Defendants promised to "search their records and [] provide a supplemental response," (Supplemental Document Response, p. 5) (Exhibit E), no such supplement has been forthcoming.  These documents obviously exist, and the Defendants are in clear violation of the Court's order.  The imposition of sanctions is warranted.

31.     In demand number Thirty-Nine, the Plaintiff requested correspondence between Defendants Monroe County and Correctional Medical Care regarding medical care at the Monroe County Jail.  The Plaintiff further clarified his request to include any correspondence between Monroe County and Correctional Medical Care regarding Monroe County's termination of Correctional Medical Care's contract.  Again, the Defendants claim that no such documentation exists.  This response again defies credulity.  Sanctions should be forthcoming for this willful failure to respond to the Plaintiff's demands.

32.     In demand number Forty, the Plaintiff seeks documents prepared by Correctional Medical Care addressing the cost of inmate health care at its various constituent facilities, and the relationship between providing healthcare to inmates and the profitability of Correctional Medical Care.  The Plaintiff clarified this request, and sought "Correctional Medical Care Site Budgets" for all of Correctional Medical Care's facilities.  The Plaintiff knows about these documents because they have been produced in this case, and have been produced in another case in which his counsel

15

has participated.  (See, Third Supplemental Document Response, pp. 5-8) (Exhibit O).  Again, the Defendants claim that they will provide responsive documents at a later date.  This response is unacceptable.  The documents in question can be easily produced, and have been produced in this case for Monroe County.  The failure to comply with this clear document request merits the imposition of sanctions.

33.     In demand number Forty-Two, the Defendants claim that the Plaintiff's request for information about their Assurance Agreement with the New York State Office of Attorney General is unclear.  As further detailed in paragraph 15 above, there are obviously a range of documents circulated between the Attorney General's office and Correctional Medical Care, including a notice of investigation, potential interviews, documentation supplied by Correctional Medical Care, and post-agreement monitoring reports.  The failure to comply with this request is deserving of sanctions.

34.     In demand number Forty-Four, the Plaintiff requests information on financial bonuses that have been paid to Correctional Medical Care employees.  While the Defendants claim that no such documentation exists, the Plaintiff is aware of at least one occasion where such a bonus was paid, involving the death of Frederick Haag.  Mr. Haag died a preventable death after his severe mental health issues were ignored by a Correctional Medical Care "Director of Mental Health," Morganne Shute; an individual who did not have a license as a mental health provider. The Commission of Correction issued a scathing report regarding Mr. Haag's death.  (COC Report, Frederick Haag, p. 8) ("The Office of the Sheriff shall undertake an inquiry to determine whether, based upon the grossly and flagrantly improper and inadequate care delivered in this case, CMC, Inc. is fit to provide medical and mental health care at the Tioga County Jail or should be terminated for cause.") (Exhibit FF).  The response of Correctional Medical Care was to pay Ms. Shute a bonus, and detail the company's satisfaction with her efforts.  (Letter from Emre Umar to

Shute, January 12, 2012) (detailing Shute's "excellent job done," and claiming that the Commission of Correction was "extremely complimentary of your performance") (Exhibit GG). This letter was produced in prior litigation. The Plaintiff believes that Correctional Medical Care has paid bonuses to its other employees when faced with adverse regulatory action, and it should have produced the Shute letter, at a minimum. Again, the issuance of sanctions is appropriate here.

35.     As the exhaustive list provided above details, the Defendants have refused to supply a range of documentation in response to the Plaintiff's discovery demands, in direct contradiction to this Court's multiple orders. Many of these documents, including financial documents, corporate taxes, copies of lawsuits and grievance documents, are easily obtainable and producible for this case. The Plaintiff's patience with the Defendants' recalcitrance is exhausted. This case has been in suit for two years, and the Plaintiff has been seeking compliance with these requests for over eighteen months. No depositions of the Defendants' agents have been taken. The parties' effort to mediate the case in late 2016 was destroyed by this lack of production. The Plaintiff first moved to compel the production of these documents in April 2017, and received an order directing compliance in June 2017. Following repeated, and generous, efforts to gain compliance with the Court's June order, the Plaintiff then had to seek sanctions. The Court granted that motion, and directed a further response in late-October 2017. Again, following repeated, and generous, efforts to gain compliance with their document demands, the Plaintiff has been forced to seek sanctions. In an effort to foster cooperation, the Plaintiff even agreed to forgo the financial penalty from the Court's prior order in the hopes that this gracious gesture would finally get this case moving forward. Instead, the Plaintiff has incurred months of additional, unnecessary recalcitrance, delay and expense; recalcitrance, delay and expense that have been maintained in the face of repeated warnings that this motion was forthcoming. The Plaintiff has been severely prejudiced by this unnecessary delay, both initially by the delay in general, and by how this delay

has affected his ability to call an important witness regarding his condition, namely, his mother, who is terminally ill.  The Plaintiff has also had to incur substantial attorneys' fees unsuccessfully attempting to gain compliance with his demands.

36.    Here, it is apparent that the Defendants have no respect for the Court or for the requirements of the Federal Rules of Civil Procedure. Consequently, the Plaintiff seeks severe sanctions against the Defendants for their willful, wanton and continuing refusal to comply with this Court's orders and the Plaintiff's longstanding discovery demands.   These sanctions are warranted both by the severity of the conduct in question, including ignoring two prior Court orders (one of which imposed sanctions), and to deter future misconduct from both these Defendants and others.   Consequently, the Plaintiff seeks the following sanctions against the Defendants:

- An Order of this Court Striking the Defendants' Answer, and Entering Judgment on Liability in Favor of the Plaintiff.

- In the Alternative, an Order of this Court precluding the Defendants from contesting the Plaintiff's claim that he was given a toxic and prolonged overdose of a medication for which he was not prescribed when this matter is tried to jury.  This instruction is particularly appropriate given Mr. Howell's medical records from the Strong Memorial Hospital, which detail substantial concerns regarding "serotonergic toxicity or dextromethorphan toxicity," with those medicines not being "on the patient's medication list."  (Howell Discharge Records, p. 2) (Exhibit HH).[2]

---

[2] Serotonergic toxicity is associated with the use of antidepressants.  (See, Serotonin Syndrome (Serotonin Syndrome), www.uptodate.com, 2018) (Exhibit II).   Dextromethorphan toxicity is associated with the use of cough medicine.   (See, Dextromethorphan Abuse and Poisoning: Clinical Features and Diagnosis, www.uptodate.com, 2018) (Exhibit JJ).

- An Order of this Court imposing a conditional financial sanction on the Defendants, jointly and severally, of $50,000.00 (payable to the Court's *pro bono* fund), should they continue to refuse to comply with this Court's orders compelling compliance with the Plaintiff's document demands, as many of these documents are also relevant to the Plaintiff's claims for compensatory and, against Correctional Medical Care, punitive damages.

- An award of counsel fees to the Plaintiff for their extensive efforts subsequent to the September 20, 2017 discovery hearing to gain compliance with the Court's order, including fees for the preparation of this motion.

- Any other punitive measures this Court seeks to impose, in its inherent power and discretion.

37.     The Plaintiff thanks the Court for its consideration of this motion.

Respectfully Submitted and Affirmed By:

/s Elmer Robert Keach, III

Dated:  January 17, 2018

_____
Elmer Robert Keach, III, Esquire
LAW OFFICES OF ELMER ROBERT
  KEACH, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
Telephone:    518.434.1718
Telecopier:    518.770.1558
Electronic Mail:  bobkeach@keachlawfirm.com

**ATTORNEY FOR PLAINTIFF
WILLIAM HOWELL**